**UNITED STATES of America,**
**Appellee,**

v.

**Jerome CROSBY, Defendant–Appellant.**

**No. 03–1675.**

United States Court of Appeals,
Second Circuit.

Argued: Jan. 14, 2005.

Decided: Feb. 2, 2005.

John A. Cirando, Syracuse, N.Y. (Lisa M. Cirando, Susan R. Rider, Mickelle A. Olawoye, D.J. & J.A. Cirando, Esqs., Syracuse, N.Y., on the brief), for Defendant–Appellant.

Jerome Crosby, pro se, Ray Brook Federal Correctional Institution, Ray Brook, N.Y., submitted a brief for Defendant–Appellant.

Elizabeth S. Riker, Dep. Appellate Chief, Office of the U.S. Atty., Syracuse, N.Y. (Glenn T. Suddaby, U.S. Atty., Richard R. Southwick, Asst. U.S. Atty., Syracuse, N.Y., on the brief), for Appellee.

Before: NEWMAN, KEARSE and CABRANES, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal of a sentence imposed in a federal criminal case requires us to begin the process of implementing the decision of the Supreme Court in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (*"Booker/Fanfan"*).[1] Defendant–Appellant Jerome Crosby appeals from the October 23, 2003, judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Chief Judge), sentencing him to imprisonment for ten years after he pled guilty to a firearms violation. We conclude that the District Court should have the opportunity to consider whether to resentence, and we therefore remand for that purpose.

## Background

Crosby was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). He entered a plea of guilty to the single count of the indictment. There was no plea agreement.

Utica police officers had arrested Crosby after responding to a "shots fired" complaint. Witnesses at the scene told them that Crosby had fired a shotgun in their direction from the window of his car. When Crosby saw the officers, he ran from the car, and, as one of the officers pursued him, turned and pointed a loaded shotgun at the officer. After a brief struggle, Crosby was subdued and arrested.

The Government based its contention that Crosby was a felon on his two Florida state court convictions, one for attempted murder in the second degree and one for battery on a law enforcement officer. The Defendant disputed that either of the Florida convictions was a felony, pointing out that his sentences had been withheld and that, in view of his age at the time of the offenses, he had been placed in Community Control for the attempted murder and placed on probation for the battery. He did not dispute that he was subsequently sentenced to twelve years' imprisonment after the revocation of his Community Control and probation. The District Court credited the Government's evidence, obtained from Florida officials, that Crosby's offenses were felonies under Florida law.

The District Court accepted the Defendant's guilty plea. During the plea colloquy, the Defendant did not dispute that on March 9, 2002, he possessed a firearm. In entering his guilty plea, the Defendant purported to reserve the right to appeal "the determination concerning his Florida convictions."[2]

---

1. Prior to filing, this opinion has been circulated to all the judges of this Court.

2. The Assistant United States Attorney rather obligingly responded, "So we have no agreements at all other than the defendant's going to plead guilty, including he's not giving up

The District Court then conducted an evidentiary hearing to resolve factual disputes concerning enhancements required by the federal Sentencing Guidelines ("Guidelines"). At sentencing, Chief Judge Scullin applied the 2002 Sentencing Guidelines Manual. The Judge started with a base offense level of 24, applicable to a defendant who has violated 18 U.S.C. § 922(g) after conviction of at least two felonies involving a crime of violence or a controlled substance offense. *See* U.S.S.G. § 2K2.1(a)(2). The Judge then made three enhancements based on judicial fact-finding. First, the Judge added four levels for using the possessed firearm in connection with another felony. *See id.* § 2K2.1(b)(5). The Judge deemed pointing the loaded shotgun at the pursuing police officer to be the New York felony of first degree reckless endangerment. *See* N.Y. Penal Law § 120.25 (McKinney 2004). Next, the Judge added three levels for creating a substantial risk of injury to a law enforcement officer. *See* U.S.S.G. § 3A1.2(c)(1). Finally, the Judge added two levels for obstruction of justice, finding the Defendant's testimony at the evidentiary hearing to have been materially false. *See id.* § 3C1.1. The resulting adjusted offense level of 33, in Criminal History Category IV, yielded a sentencing range of 188 to 235 months. *See id.* ch. 5, pt. A (Sentencing Table).

Recognizing that the Guidelines required imposition of as much of the Guidelines sentence as the statutory maximum permitted, *see id.* § 5G1.1(a); 18 U.S.C. § 924(a)(2), the District Judge sentenced Crosby to imprisonment for ten years, followed by a three-year term of supervised release, and a special assessment of $100.

Crosby appealed his sentence, and we requested and have received supplemental papers after the oral argument.

## Discussion

■ The principal issue on appeal concerns the lawfulness of the sentence.[3] At oral argument just two days after the Supreme Court's decision in *Booker/Fanfan*, Crosby contended that the enhancements, which were based on the District Judge's fact-finding and which the District Judge felt compelled to add under the Guidelines, violated his Sixth Amendment right to trial by jury.

In considering this issue, we are mindful that this will be the first sentencing appeal decided by our Court since the decision in *Booker/Fanfan*. As such, it will likely be of special interest to the district judges of this Circuit as they confront a host of new issues. It would be entirely inappropriate for us even to try to anticipate all of those issues, much less resolve them. Nevertheless, we believe that in the aftermath of a momentous decision like *Booker/Fanfan*, which will affect a large number of cases confronting the district judges of this Cir-

---

his right to appeal anything that he wants to appeal . . . ."

**3.** Although the only issue raised in the Appellant's brief is the lawfulness of the ten-year prison term, the brief includes one sentence contending that Crosby should not have been sentenced as a convicted felon. This sentence, not explained elsewhere in the brief, challenges the conviction. Yet Crosby pled guilty to the offense of possession of a firearm by a convicted felon. An unconditional plea of guilty waives all contentions that are not jurisdictional, *see, e.g., United States v. Sykes,*

697 F.2d 87, 89 (2d Cir.1983); *United States v. Selby,* 476 F.2d 965, 966–67 (2d Cir.1973). Whether or not Crosby's purported reservation of appellate rights complied with the requirements for a "conditional plea," *see* Fed.R.Crim.P. 11(a)(2), his claim that he has not previously been convicted of two felonies is without merit, for the reasons fully explained by the District Court.

Equally without merit is the claim that the indictment was deficient in not identifying the prior conviction. *See United States v. Gillies,* 851 F.2d 492, 496 (1st Cir.1988).

cuit almost daily, it is appropriate for us to explain the larger framework within which we decide this appeal. We do so in the hope that our explanation will be helpful to bench and bar alike. In formulating our thoughts on these matters, the members of this panel have greatly benefitted from numerous suggestions and comments by other judges of this Court.

## I. Federal Sentencing Law Before *Booker/Fanfan*

Since November 1, 1987, sentences in federal criminal cases have been deter-mined pursuant to the Sentencing Reform Act of 1984 ("SRA"), Pub.L. 98–473, Title II, §§ 211–238, 98 Stat.1987 (1984), and the Guidelines issued by the United States Sentencing Commission, *see* U.S.S.G. §§ 1A1.1–8F1.1. As it stood prior to the decision in *Booker/Fanfan*, the SRA speci-fied several requirements for selecting an appropriate sentence. Especially perti-nent to the pending appeal are sections 3553(a) and 3553(b),[4] set out in the mar-gin.[5] Section 3553(a) specifies several fac-tors that sentencing judges are required to consider in determining a sentence.

4. All references in this opinion to provisions of the SRA will use the section numbers of Title 18.

5. Section 3553(a) provides:

(a) Factors to be considered in imposing a sentence.—The court shall impose a sen-tence sufficient, but not greater than neces-sary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sen-tence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence im-posed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treat-ment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sen-tencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(I) issued by the Sentencing Com-mission pursuant to section 994(a)(1) of ti-tle 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amend-ments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of pro-bation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy state-ments by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commis-sion into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Com-mission pursuant to section 994(a)(2) of ti-tle 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorpo-rated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in sec-tion 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sen-tence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Section 3583(c) cross-references nearly all the factors listed in section 3553(a), but omits subsections (2)(A) and (3).

Among these factors are the applicable provisions of the Guidelines. *See* Subsection 3553(a)(4). Subsection 3553(b)(1), with an exception not pertinent to this appeal, generally requires the sentencing judge to impose a sentence within the range resulting from application of the Guidelines to the specific facts of the defendant's offense conduct (not limited to the precise offense of conviction) and the defendant's criminal record. This subsection also permits the sentencing judge to select a sentence above or below the applicable Guidelines range, but only on the basis of circumstances "not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b)(1); U.S.S.G. § 5K2.0, cmt. background. A sentence outside the applicable Guidelines range, selected in conformity with the statutory and Guidelines standards for varying from the applicable range, is known as a "departure."

The SRA also provides for appeal of a sentence by the defendant or the Government under limited circumstances, *see* sections 3742(a), (b), and, pertinent to this appeal, specifies the grounds upon which an appellate court is permitted to review a sentence, *see* section 3742(e). These grounds include an incorrect application of the Guidelines and a departure from the applicable Guidelines range made without

complying with the relevant statutory requirements.

## II. The *Booker/Fanfan* Opinions

The Supreme Court's decision in *Booker/Fanfan* significantly altered the sentencing regime that has existed since the Guidelines became effective on November 1, 1987. The Court's two-part decision consists of an opinion by Justice Stevens adjudicating the merits of the Sixth Amendment issue ("Substantive Opinion"), and an opinion by Justice Breyer setting forth the remedy ("Remedy Opinion").

### A. Substantive Opinion

*Booker/Fanfan* was the culmination of a series of decisions explicating the requirements of the Sixth Amendment in the context of sentencing. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In the Substantive Opinion, the Court ruled that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Book-*

Section 3553(b) provides, in pertinent part:
(b) Application of guidelines in imposing a sentence.—
(1) In general.—Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining

whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and of-

*er/Fanfan,* —— U.S. at ——, 125 S.Ct. at 756 (Substantive Opinion).[6] This ruling, the Court explained, was required for "enforcement of the Sixth Amendment's guarantee of a jury trial in today's world." *Id.* at 751 (Substantive Opinion). As the Court explained, the "world" of sentencing formerly relied primarily on indeterminate sentencing, *i.e.,* a regime in which, for every offense, the sentencing judge had discretion to select a sentence anywhere within the range bounded by the maximum sentence and the minimum sentence, if any, that the legislature established. But that "world," the Court further explained, was significantly modified by the advent of determinate sentencing, *i.e.,* a regime in which a legislature or a commission specifies precise sentences or, more typically, establishes fairly narrow ranges within the broader statutory ranges, and the sentencing judge is required to select a sentence within the narrow range, subject to limited exceptions.

The Substantive Opinion emphasized that it was the mandatory aspect of these determinate sentencing regimes that implicated the Sixth Amendment's requirement of a jury trial:

> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges .... For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*Id.* at 750 (Substantive Opinion) (internal citations omitted).

In Booker's case, the Court ruled in the Substantive Opinion that Booker's sentence violated the Sixth Amendment because the sentencing judge, as required by the Guidelines, had increased the sentencing range of 210–262 months, the applicable range based on the facts reflected in the jury's verdict, to 360 months to life, the applicable range based on the facts of the defendant's "relevant conduct," *see* U.S.S.G. § 1B1.3, as found by the judge. Booker received a sentence of 360 months. In Fanfan's case, the applicable Guidelines range had been increased from 63–78 months to 188–235 months based on the sentencing judge's finding of relevant conduct. However, the sentencing judge, concluding that *Blakely* precluded his use of the Guidelines to enhance the sentencing range above the range based solely on the

---

fenders, and to the applicable policy statements of the Sentencing Commission.

**6.** The *Apprendi* opinion, which is "reaffirm[ed]" in *Booker/Fanfan,* —— U.S. at ——, 125 S.Ct. at 756 (Substantive Opinion), makes clear that the "maximum" referred to here is the maximum lawful penalty, *see Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (quoted in *Booker/Fanfan,* —— U.S. at ——, 125 S.Ct. at 746) (Substantive Opinion). In other words, under the pre-*Booker/Fanfan* regime, the maximum lawful sentence was the maximum sentence permit-

ted by the jury's verdict alone, without further fact-finding by the judge. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2537 ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (emphasis in original)) (quoted in *Booker/Fanfan,* —— U.S. at ——, 125 S.Ct. at 747)(Substantive Opinion). *Booker/Fanfan* holds that judicial fact-finding that increases that maximum lawful penalty, if required by the Guidelines, is prohibited. As a result of the Remedy Opinion in *Booker/Fanfan,* however, the maximum lawful sentence is the statutory maximum sentence, and because judicial fact-finding under advisory guidelines cannot increase that

verdict, applied the 63–78 months range and imposed a sentence of 78 months.

### B. Remedy Opinion

In the Remedy Opinion, the Court ruled that implementation of the Substantive Opinion required that two provisions of the SRA be "sever[ed] and excise[d]." *Booker/Fanfan*, —— U.S. at ——, 125 S.Ct. at 764 (Remedy Opinion). These are subsection 3553(b)(1), mandating use of the Guidelines, and section 3742(e), which "sets forth standards of review on appeal." *Id.* (Remedy Opinion).

Having severed and excised the SRA's standards governing review of sentences, the Court in the Remedy Opinion replaced them with "a practical standard of review already familiar to appellate courts: review for 'unreasonable[ness].'" *Id.* at 765 (Remedy Opinion)(quoting subsection 3742(e)(3)). The Court pointed out that "'[r]easonableness' standards are not foreign to sentencing law." *Id.* at 766 (Remedy Opinion). The SRA has required appellate courts to use the standard of "reasonableness" or, the opposite side of the same coin, "unreasonableness," in two contexts. First, prior to a 2003 amendment,[7] subsection 3742(e)(3) instructed appellate courts reviewing a departure to determine whether the re-

sulting sentence is "unreasonable" after considering various identified factors. Second, subsections 3742(a)(4), (b)(4), and (e)(4) instructed appellate courts to use the standard of "plainly reasonable" in reviewing a sentence imposed in the absence of an applicable guideline.

Although the most significant aspect of the Remedy Opinion is the excision of subsection 3553(b)(1), with the result that the use of the Guidelines to select a sentence is no longer mandatory, a critically important aspect of *Booker/Fanfan* is the preservation of the entirety of the SRA with the exception of only the two severed provisions.[8] As the Court noted in the Remedy Opinion, "The remainder of the Act 'function[s] independently.'" *Booker/Fanfan*, —— U.S. at ——, 125 S.Ct. at 764 (Remedy Opinion)(quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987)). Notably, the Court explained, "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Id.* at 766 (Remedy Opinion).

### III. Federal Sentencing Law After *Booker/Fanfan*

*Booker/Fanfan* can be expected to have a significant effect on sentencing in federal

---

lawful maximum, judicial fact-finding now encounters no Sixth Amendment difficulties.

7. *See* Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108–21, § 401(d), 117 Stat. 650, 670 (2003) (codified at 18 U.S.C. § 3742(e) (2003)); *United States v. Cotto*, 347 F.3d 441, 445 (2d Cir. 2003). The PROTECT Act retained "unreasonableness" as the standard for review of the extent of a departure, but prescribed *de novo* review of a district court's application of the Guidelines to the facts, *see United States v. Kostakis*, 364 F.3d 45, 51 (2d Cir.2004). This latter standard was explicitly discarded by the Supreme Court in its Remedy Opinion. *See Booker/Fanfan*, —— U.S. at ——, 125 S.Ct. at 764 (Remedy Opinion)("Application of these

criteria indicates that we must sever and excise two specific statutory provisions ... and the provision that sets forth standards of review on appeal, including *de novo* review of departures from the applicable Guidelines range, see § 3742(e).").

8. We note that *Booker/Fanfan* did not explicitly excise subsection 3553(b)(2), concerning the Guidelines ranges for child crimes and sexual offenses; any parts of section 3553(e), concerning substantial assistance departures below mandatory minimums; or section 3553(f), concerning "safety-valve" relief, each of which state that courts "shall impose" sentences in accordance with Guidelines in certain circumstances. Because none of those provisions is implicated in the pending case, we do not consider what effect, if any, *Booker/Fanfan* has on such provisions.

criminal cases, although perhaps not as drastic an effect as some might suppose.

## A. District Court Sentencing After *Booker/Fanfan*

Prior to *Booker/Fanfan*, the section 3553(a) requirement that the sentencing judge "consider" all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guidelines range unless the statutory standard for a departure was met. Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to "consider" numerous factors acquires renewed significance.

It is important to bear in mind that among the matters that section 3553(a) requires the sentencing judge to consider are:

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(I) issued by the Sentencing Commission '. . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission . . . .

18 U.S.C. § 3553(a)(4), (5).

Thus, the excision of the mandatory aspect of the Guidelines does not mean that the Guidelines have been discarded. On the contrary, sentencing judges remain under a duty with respect to the Guidelines— not the previously imposed duty to apply the Guidelines, but the continuing duty to "consider" them, along with the other factors listed in section 3553(a).

In order to fulfill this statutory duty to "consider" the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range. A judge cannot satisfy this duty by a general reference to the entirety of the Guidelines Manual, followed by a decision to impose a "non-Guidelines sentence."[9] Subsection 3553(a)(4) contemplates consideration of the Guidelines range applicable to the defendant,[10] and subsection 3553(a)(5)

---

**9.** We think it advisable to refer to a sentence that is neither within the applicable Guidelines range nor imposed pursuant to the departure authority in the Commission's policy statements as a "non-Guidelines sentence" in order to distinguish it from the term "departure." A "departure," in the jurisprudence of the mandatory Guidelines regime, meant a sentence above or below the applicable Guidelines range when permitted under the standards governing departures. A "departure" was not a sentence within the applicable Guidelines range, but it was nonetheless a "Guidelines sentence," *i.e.*, imposed pursuant to the departure provisions of the policy statements in the Guidelines, as well as the departure authority of subsection 3553(b)(1).

**10.** We have considered and rejected a reading of subsection 3553(a)(4) that would require consideration of a broader sentencing range than the applicable Guidelines range. This subsection refers to the defendant's "applica-

ble category of offense," a phrase that might be read to mean a sentencing range that spans all of the Guidelines ranges for the applicable category, for example, the ranges applicable to the category of drug offenses. Such a reading would yield a sentencing range of vast dimension, one that would be entirely inconsistent with the purposes of the SRA and in specific conflict with the statutory requirement that the top of a sentencing range not exceed the bottom of the range by more than twenty-five percent. *See* 28 U.S.C. § 994(b)(2). "Applicable category of offense" is simply an imprecise way of saying the applicable guideline range, *i.e.*, the sentencing range that corresponds to the adjusted offense level. Since Congress drafted the SRA before the appearance of the Guidelines, it is not surprising that the drafters did not use the precise terminology that would later be used by the Commission.

contemplates consideration of policy statements issued by the Sentencing Commission, including departure authority. The applicable Guidelines range is normally to be determined in the same manner as before *Booker/Fanfan*. Moreover, although the Court in the Substantive Opinion prohibits a sentencing judge from finding any facts that enhanced a Guidelines sentence above the range that is based solely on facts found by the jury in its verdict or admitted by the defendant, the Court in its Remedy Opinion contemplates that, with the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection.[11] Thus, the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence.

In one circumstance, however, precise calculation of the applicable Guidelines range may not be necessary. Now that the duty to apply the applicable Guidelines range is not mandatory, situations may arise where either of two Guidelines ranges, whether or not adjacent, is applicable, but the sentencing judge, having complied with section 3553(a), makes a decision to impose a non-Guidelines sentence, regardless of which of the two ranges applies. This leeway should be useful to sentencing judges in some cases to avoid the need to resolve all of the factual issues necessary to make precise determinations of some complicated matters, for example, determination of monetary loss. Similarly,

close questions may sometimes arise as to the precise meaning or application of a policy statement authorizing a departure, and a judge who has considered policy statements concerning departures need not definitively resolve such questions if the judge has fairly decided to impose a non-Guidelines sentence.

In the pre-*Booker/Fanfan* era, we had encountered a similar situation where the resolution of a disputed fact could sometimes be avoided if the alternative Guidelines ranges were adjacent in the Sentencing Table. Because these ranges partly overlap, we ruled that a judge imposing a sentence within the limits of the overlap between two adjacent ranges and indicating that the sentence would be the same regardless of which Guidelines range applied, need not resolve the disputed issue to determine which of the two ranges actually applies. *See United States v. Shuster*, 331 F.3d 294, 296–97 (2d Cir.2003); *United States v. McHugh*, 122 F.3d 153, 158 (2d Cir.1997); *United States v. Bermingham*, 855 F.2d 925, 930–32 (2d Cir.1988).[12] We had also ruled that a dispute as to which of two arguably applicable ranges applied need not be resolved by a judge who had decided to make a permissible departure, regardless of which range was applicable. *See United States v. Borrego*, 388 F.3d 66, 68–70 (2d Cir.2004).

Once an applicable Guidelines range has been determined, the sentencing judge will have the duty, imposed by subsection 3553(a)(4), to "consider" it, along with all of the factors listed in section 3553(a). We have previously encountered a sentencing judge's duty to "consider" matters relevant

---

11. *See ante note 6.*

12. We recognize that additional situations may arise where the sentencing judge would not need to resolve every factual issue and calculate the precise Guidelines range, be-

cause the resolution of those issues might not affect a non-Guidelines sentence if the sentencing judge chooses to impose it. We leave a fuller analysis of this question for the appropriate case.

to sentencing. We have done so in applying section 3583(e), which requires a court deciding whether to revoke a term of supervised release and the length of any imprisonment for violation of supervised release, to "consider[ ]" many of the factors listed in section 3553(a), including those listed in subsection 3553(a)(4). *See United States v. Pelensky,* 129 F.3d 63, 69–70 (2d Cir.1997); *United States v. Sweeney,* 90 F.3d 55, 57–58 (2d Cir.1996); *United States v. Anderson,* 15 F.3d 278, 281–84 (2d Cir.1994). Although these decisions do not rule definitively on the meaning of "consider," they have refrained from imposing any rigorous requirement of specific articulation by the sentencing judge. In this respect, our approach has been similar to that taken in applying subsection 3663(a)(1)(B), which requires a judge imposing restitution to "consider," for example, the loss sustained and the defendant's financial circumstances. *See United States v. Ben Zvi,* 242 F.3d 89, 99–100 (2d Cir.2001) ("[S]entencing judge acted within the bounds of his discretion in not making detailed findings."); *United States v. Harris,* 79 F.3d 223, 232–33 (2d Cir.1996) (court "not required to set forth detailed findings as to" relevant factors).

We need not on this appeal endeavor to determine what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the applicable Guidelines range. We think it more consonant with the day-to-day role of district judges in imposing sentences and the episodic role of appellate judges in reviewing sentences, especially under the now applicable standard of "reasonableness," to permit the concept of "consideration" in the context of the applicable Guidelines range to evolve as district judges faithfully perform their statutory duties. Therefore, we will not prescribe any formulation a sentencing judge will be obliged to follow in order to demonstrate discharge of the duty to "consider" the Guidelines. In other words, we will no more require "robotic incantations" by district judges than we did when the Guidelines were mandatory. *See, e.g., United States v. Brown,* 98 F.3d 690, 694 (2d Cir.1996).

■ Thus, at this point, we can identify several essential aspects of *Booker/Fanfan* that concern the selection of sentences. First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, *i.e.,* a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

These principles change the Guidelines from being mandatory to being advisory, but it is important to bear in mind that *Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge. Thus, it would be a mistake to think that, after *Booker/Fanfan,* district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and mini-

mum. On the contrary, the Supreme Court expects sentencing judges faithfully to discharge their statutory obligation to "consider" the Guidelines and all of the other factors listed in section 3553(a).[13] We have every confidence that the judges of this Circuit will do so, and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice. In short, there need be no "fear of judging."

### B. Appellate Review of Sentences After *Booker/Fanfan*

■ *Identifying an error.* In considering appellate review of sentences under the now applicable standard of "reasonableness," we first note that review for "reasonableness" is not limited to consideration of the length of the sentence. If a sentencing judge committed a procedural error by selecting a sentence in violation of applicable law, and that error is not harmless and is properly preserved or available for review under plain error analysis, *see United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the sentence will not be found reasonable.

Courts have traditionally followed a similar approach when reviewing a decision for abuse of discretion. A district judge has been deemed to have abused discretion not only because the decision on its merits exceeded the bounds of allowable discretion but also because the judge committed an error of law in the course of exercising discretion, *see Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous

legal conclusions."); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (same); *Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 168–69 (2d Cir.2001) (same), or made a clearly erroneous finding of fact, *see Cooter & Gell,* 496 U.S. at 401, 110 S.Ct. 2447.

■ Similarly, a sentence would not be "reasonable," regardless of length, if legal errors, properly to be considered on appeal, led to its imposition. Although unusual circumstances might arise that could precipitate errors not now anticipated, four types of procedural errors can usefully be identified at this point.

■ First, and most obviously, a sentencing judge would violate the Sixth Amendment by making factual findings and *mandatorily* enhancing a sentence above the range applicable to facts found by a jury or admitted by a defendant. That is the error that occurred in Booker's case, as the Supreme Court in its Substantive Opinion made clear.

■ Second, and less obviously, a sentencing judge would commit procedural error by *mandatorily* applying the applicable Guidelines range that was based solely on facts found by a jury or admitted by a defendant. The Court in its Remedy Opinion made clear that, even though the resulting sentence would not violate the Sixth Amendment, the judge would have erred by mandatorily acting under the now-excised requirement of subsection 3553(b)(1). A sentence explicitly based upon a non-existent statutory provision, even if "reasonable" in length, constitutes error (although possibly "harmless error" or not "plain error"), because of the unlaw-

---

**13.** *See Booker/Fanfan,* —— U.S. at ——, 125 S.Ct. at 766 (Remedy Opinion)("Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.").

ful method by which it was selected. It was presumably this type of error that prompted the Supreme Court to remand the sentence in Fanfan's case. Although the sentencing judge in *Fanfan* had anticipated the Substantive Opinion in *Booker/Fanfan* and had declined to sentence under the enhanced Guidelines range, the judge, understandably not anticipating the Remedy Opinion, had felt compelled by subsection 3553(b)(1) to apply the unenhanced range. The resulting sentence in *Fanfan* thus did not violate the Sixth Amendment, but the Supreme Court nonetheless vacated it, and remanded in order to permit either party to seek, and the District Court to undertake, resentencing.

■ Third, a sentencing judge would commit a statutory error in violation of section 3553(a) if the judge failed to "consider" the applicable Guidelines range (or arguably applicable ranges) as well as the other factors listed in section 3553(a), and instead simply selected what the judge deemed an appropriate sentence without such required consideration.

■ Fourth, a sentencing judge would also violate section 3553(a) by limiting consideration of the applicable Guidelines range to the facts found by the jury or admitted by the defendant, instead of considering the applicable Guidelines range, as required by subsection 3553(a)(4), based on the facts found by the court. This type of error was also presumably a basis for the remand in Fanfan's case. All of these potential errors, if available for review on appeal, would render a sentence unreasonable, regardless of length, because of the unlawfulness of the method of selection.

■ Even if reasonable as to length, a sentence unreasonable for legal error in the method of its selection is cause for concern because, in many cases, it will be impossible to tell whether the judge would

have imposed the same sentence had the judge not felt compelled to impose a Guidelines sentence. It will also be impossible to tell what considerations counsel for both sides might have brought to the sentencing judge's attention had they known that they could urge the judge to impose a non-Guidelines sentence.

Because "reasonableness" is inherently a concept of flexible meaning, generally lacking precise boundaries, we decline to fashion any *per se* rules as to the reasonableness of every sentence within an applicable guideline or the unreasonableness of every sentence outside an applicable guideline. Indeed, such *per se* rules would risk being invalidated as contrary to the Supreme Court's holding in *Booker/Fanfan*, because they would effectively re-institute mandatory adherence to the Guidelines. *See Booker/Fanfan*, —— U.S. at ——, 125 S.Ct. at 794 (Scalia, J., dissenting in part).

Moreover, *per se* rules would be inconsistent with the flexible approach courts have taken in implementing the standard of reasonableness in the sentencing contexts to which this standard applied prior to *Booker/Fanfan*, such as review to determine whether the extent of a departure was "unreasonable," subsection 3742(e)(3), *see Borrego*, 388 F.3d at 70; *United States v. Merritt*, 988 F.2d 1298, 1311–12 (2d Cir.1993), and review to determine whether a sentence imposed in the absence of an applicable guideline was "plainly unreasonable," the standard of subsections 3742(a)(4), (b)(4), (e)(4), *see United States v. Aspinall*, 389 F.3d 332, 349–51 (2d Cir. 2004); *United States v. Sweeney*, 90 F.3d at 57. The Court in its Remedy Opinion explicitly noted the familiarity of appellate courts with these two statutory duties to review sentences for reasonableness.

This second context is especially relevant because it includes review of a sentence imposed after revocation of a term of

supervised release, as authorized by subsection 3583(e)(3). Noting that the recommended terms for post-revocation imprisonment are not set forth in any guideline but are contained in policy statements, we have ruled that these statements, in this context, are "advisory, rather than binding," *Anderson,* 15 F.3d at 284,[14] and that we would review revocation sentences imposed after considering these advisory statements to determine if the sentences were "plainly reasonable," *Aspinall,* 389 F.3d at 349–51; *Sweeney,* 90 F.3d at 57. The parallel between advisory policy statements and, after *Booker/Fanfan,* non-binding, and therefore advisory, Guidelines seems clear.[15]

District judges will, of course, appreciate that whatever they say or write in explaining their reasons for electing to impose a Guidelines sentence or for deciding to impose a non-Guidelines sentence will significantly aid this Court in performing its duty to review the sentence for reasonableness. In this regard, we note that, in the Remedy Opinion, the Supreme Court left unimpaired section 3553(c), which requires a district court to "state in open court the reasons for its imposition of the particular sentence" and, in subsection 3553(c)(2), to state in writing "with specificity" the reasons for imposing a sentence outside the calculated Guidelines range.

*Disposition if error has been committed.* We are aware of the admonition to appellate courts in the Remedy Opinion to bear in mind "ordinary prudential doctrines" such as "the 'plain-error' test" and "the harmless-error doctrine" in determining "whether *resentencing* is warranted." *Booker/Fanfan,* —— U.S. at ——, 125 S.Ct. at 769 (Remedy (Opinion)(emphasis added). We have regularly applied such doctrines with respect to sentencing appeals. *See, e.g., United States v. Gutierrez Rodriguez,* 288 F.3d 472, 475–78 (2d Cir.2002); *United States v. Thomas,* 274 F.3d 655, 666 (2d Cir.2001) (in banc). In cases involving review of sentences imposed *after* the date of *Booker/Fanfan,* we would expect to apply these prudential doctrines in the customary manner. The appropriate disposition of an appeal of a sentence imposed *before* the date of *Booker/Fanfan* requires more analysis.[16]

Several considerations illuminate the context in which a decision as to disposition must be made. First, the change in the applicable law that governs such a disposition will alter a settled pattern of sentencing law that has governed every federal sentencing for more than seventeen years. Second, the change will affect the decision-making process of every district judge in determining every sentence, even though the change in process might often not produce a change in result. Third, unlike many changes made by Congress or the Supreme Court, it will often be difficult to predict the effect of *Booker/Fanfan* on any particular sentencing de-

---

**14.** All the Courts of Appeals have held that the policy statements in Chapter 7 of the Guidelines concerning revocation of supervised release are advisory and not binding. *See, e.g., United States v. George,* 184 F.3d 1119, 1121–22 (9th Cir.1999); *United States v. Davis,* 53 F.3d 638, 640–41 (4th Cir.1995); *United States v. Hill,* 48 F.3d 228, 231 (7th Cir.1995).

**15.** We recognize that, in some contexts, a policy statement is more than advisory. For example, if "a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guideline." *Williams v. United States,* 503 U.S. 193, 201, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

**16.** As noted, we are obliged to apply *Booker/Fanfan* to this case because it is pending on direct review. We intimate no views concerning the application of that decision to cases arising on collateral review.

cision, even though the aggregate effect upon sentencing patterns in general may well be modest. Fourth, the change affects sentencing, a context in which a variation in outcome will often have significance. For the Government, a change in cases of sentences below a statutory maximum might yield a higher sentence, one that offers the prospect of greater protection of the public's safety.[17] For a defendant, the change in cases of sentences above a statutory minimum might yield a lower sentence, and the value of a reduction in the duration of an individual's imprisonment has obvious significance. Fifth, the correction of error in the context of sentencing does not precipitate the burdensome and often lengthy consequence of a new trial, an event that consumes public resources and impinges upon the lives of many participants, such as witnesses, for whom a retrial can be a serious inconvenience. By contrast, a new sentencing is normally an uncomplicated proceeding of short duration.

Some might suppose that the only choice for an appellate court in a case presenting a procedural error in imposing a sentence is between disregarding the error and requiring a new sentencing. However, the choice is not so limited. Section 3742(f) provides: "If the court of appeals determines that—(1) the sentence was imposed in violation of law ..., the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate." Bearing in mind the several considerations outlined above that shape the context in which a disposition decision is to be made, we con-

clude that the "further sentencing proceedings" generally appropriate for pre-*Booker/Fanfan* sentences pending on direct review will be a remand to the district court, not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence. Section 3742(f), read in conjunction with section 3742(g), normally contemplates a remand for resentencing. However, since an appellate court has the authority to remand for resentencing, absent harmless error or unpreserved error that does not satisfy plain error analysis, we think an appellate court necessarily has the lesser power to remand for a determination of whether to resentence, and to permit resentencing. We note that the Supreme Court's Remedy Opinion called our attention to prudential considerations in determining "whether resentencing is warranted."

A remand for determination of *whether* to resentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines. Without knowing whether a sentencing judge would have imposed a materially different sentence, under the circumstances existing at the time of the original sentence, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations, an appellate court will normally be unable to assess the significance of any error that might have been made. Perhaps in some cases an appellate

---

17. We intimate no view at this time as to whether the Ex Post Facto Clause would prohibit a court from imposing a more severe sentence than a defendant would have received had the Guidelines remained mandatory. Cf. *United States v. Broderson*, 67 F.3d 452, 456 (2d Cir.1995) (noting that "where

application of the Guidelines in effect at sentencing would result in a more severe sentence than the version in effect at the time of the commission of the offense, the *Ex Post Facto* Clause of Article I of the Constitution requires use of the earlier version of the Guidelines").

court could make an educated guess as to the likely outcome of a remand, but that guess might be wrong, absent a clear indication at the original sentencing supporting the inference that the same sentence would have been imposed under the post-*Booker/Fanfan* regime. Furthermore, even if a judge, prior to *Booker/Fanfan*, indicated an alternative sentence that would have been imposed if compliance with the Guidelines were not required, that alternative sentence is not necessarily the same one that the judge would have imposed in compliance with the duty to consider all of the factors listed in section 3553(a).[18] In addition, such an alternative sentence is not necessarily the same one that the judge would have imposed after presentation by the Government of aggravating circumstances or by the defendant of mitigating circumstances that existed at the time but were not available for consideration under the mandatory Guidelines regime.[19]

Obviously, any of the errors in the procedure for selecting the original sentence discussed in this opinion would be harmless, and not prejudicial under plain error analysis, if the judge decides on remand, in full compliance with now applicable requirements, that under the post-*Booker/Fanfan* regime the sentence would have been essentially the same as originally imposed. Conversely, a district judge's decision that the original sentence would have differed in a nontrivial manner from that imposed will demonstrate that the error in imposing the original sentence was harmful and satisfies plain error analysis.

■ In short, a sentence imposed under a mistaken perception of the requirements of law will satisfy plain error analysis if the sentence imposed under a correct understanding would have been materially different. It is readily apparent to us that a sentence imposed prior to *Booker/Fanfan* was imposed without an understanding of sentencing law as subsequently explained by the Supreme Court. However, we cannot know whether a correct perception of the law would have produced a different sentence. A remand is needed to answer that question.[20] If a district court determines that a nontrivially different sentence would have been imposed, that determination completes the demonstration that the plain error test is met.

A remand, on a defendant's appeal, that authorizes a district judge to consider whether to resentence and that permits resentencing should include an opportunity for a defendant to avoid resentencing by promptly notifying the district judge that resentencing will not be sought.

## IV. Disposition of the Pending Appeal

■ With these principles in mind, we turn to the appropriate disposition of the

**18.** Although the duty to comply with section 3553(a) existed prior to *Booker/Fanfan*, it is unlikely that a sentencing judge anticipating that decision would have anticipated the full import of the Remedy Opinion, and considered the section 3553(a) factors, including the Guidelines, with awareness of the excision of subsection 3553(b)(1).

**19.** If, based solely on the circumstances that existed at the time of the original sentence, the sentencing judge decides to resentence, the judge will have to consider the issue of what current circumstances are to be consid-

ered, an issue on which we express no views at this time. *See United States v. Quintieri*, 306 F.3d 1217 (2d Cir.2002); *Werber v. United States*, 149 F.3d 172 (2d Cir.1998).

**20.** A district judge need only determine that the original sentence would have been nontrivially different and need not determine what that sentence would have been. Determination and imposition of the new sentence will, of course, have to comply with all applicable sentencing requirements. *See* Fed.R.Crim.P. 32.

pending appeal. The District Judge calculated the applicable Guidelines range to be 188 to 235 months, the range specified for the Defendant's adjusted offense level of 33 and his Criminal History Category of IV. We agree with that calculation. With this range in mind, the District Judge, conforming to the then-mandatory duty to apply the Guidelines, imposed the sentence required by U.S.S.G. § 5G1.1(a). This provision instructs that when the applicable Guidelines range exceeds the statutory maximum for a defendant's offense, the sentencing judge should impose the statutory maximum. Thus, the judge was required to implement the applicable Guidelines range to the greatest extent permitted by the applicable statutory maximum. Faithfully applying section 5G1.1(a), Chief Judge Scullin sentenced Crosby to ten years' imprisonment.

Crosby's sentence was imposed on October 7, 2003. Obviously, the sentencing judge did not sentence with awareness of *Booker/Fanfan*, which was decided on January 12, 2005, or even of *Blakely*, which was decided on June 24, 2004. Since Crosby's case is now pending on direct review, *Booker/Fanfan* must be applied to this appeal, *see Booker/Fanfan*, —— U.S. at ——, 125 S.Ct. at 769 (Remedy Opinion); *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), just as the Supreme Court itself applied *Booker/Fanfan* to the pending appeals of Booker and Fanfan.

The District Judge, sentencing before *Booker/Fanfan*, quite understandably committed a Sixth Amendment error by mandatorily selecting a sentence dictated by the applicable Guidelines range, which had been calculated on the basis of facts not found by a jury or admitted by the Defendant. The issue for us is to determine the consequences of this error.

Crosby contends that he is entitled to resentencing. He argues that the sentenc-

ing judge made factual determinations that increased his base offense level by nine levels, thereby significantly increasing his sentencing range from 77–96 months to 188–235 months. He further argues that it was this enhanced sentencing range that dictated his sentence at the statutory maximum.

The Government contends that the sentence should be affirmed. The Government does not dispute that the sentencing judge committed a Sixth Amendment error, but contends that such an error is harmless in view of the reasonableness of the length of the sentence and should be overlooked under the plain error doctrine in view of the defendant's lack of adequate preservation of a Sixth Amendment objection. The Government also argues that had the sentencing judge regarded the applicable Guideline range as only a range to be "consider[ed]" under section 3553(a), any sentence of less than ten years would have been unreasonable and subject to reversal on appeal by the Government under the now applicable standard of review for reasonableness.

■ As we explained in Part III(B) above, in most cases in which a sentencing judge, prior to *Booker/Fanfan*, has committed a procedural error in imposing a sentence, a remand to afford the judge an opportunity to determine whether the original sentence would have been nontrivially different under the post-*Booker/Fanfan* regime will normally be necessary to determine whether the error is harmless, or, if not properly preserved, is available for review under plain error analysis. We conclude that such a remand is warranted in this case. The Government's legitimate interests will be fully protected by the opportunity to appeal in the event that the District Court elects to resentence and imposes a sentence properly challengeable on appeal.

Because a remand is warranted, we have no occasion on this appeal to consider whether Crosby's sentence is unreasonable solely because of its length and therefore express no views on the considerations that might inform an appellate decision as to the reasonableness of the length of a sentence.

Accordingly, without requiring alteration of Crosby's sentence, we will remand the case to the District Court so that Chief Judge Scullin may consider, based on the circumstances at the time of the original sentence, *whether* to resentence, after considering the currently applicable statutory requirements as explicated in *Booker/Fanfan* and this opinion. In making that threshold determination, the District Court should obtain the views of counsel, at least in writing, but "need not" require the presence of the Defendant, *see* Fed. R.Crim.P. 43(b)(3). Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the Defendant present, resentence in conformity with the SRA, *Booker/Fanfan*, and this opinion, including an appropriate explanation, *see* § 3553(c). From whatever final decision the District Court makes, the jurisdiction of this Court to consider a subsequent appeal may be invoked by any party by notification to the Clerk within ten days of the District Court's decision, *see United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), in which event the renewed appeal will be assigned to this panel.

## Conclusion

The case is remanded for further proceedings consistent with this opinion.